```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    (ECF)
- - - - - - - - - - - - - - - - - - -:
SARAH E. SCHROM,                     :   11 Civ. 1680 (BSJ)(JCF)
                                     :
             Plaintiff,              :        MEMORANDUM
                                     :        AND   ORDER
    - against -                      :
                                     :
GUARDIAN LIFE INSURANCE COMPANY      :
OF AMERICA and LINCOLN MEMORIAL      :
UNIVERSITY-DEBUSK COLLEGE OF         :
OSTEOPATHIC MEDICINE,                :
                                     :
             Defendants.             :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This case arises out of the denial of long-term disability benefits to the plaintiff, Sarah E. Schrom. Ms. Schrom is seeking review of the adverse determination of her claim by Guardian Life Insurance Company of America ("Guardian"), pursuant to Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132. The plaintiff has moved to compel discovery from Guardian and for a protective order precluding Guardian from taking her deposition. She also seeks an order requiring Guardian to reorganize documents it previously produced in response to her discovery demands.

Background

In the fall of 2007, Ms. Schrom matriculated as a medical student at Lincoln Memorial University-Debusk College of

1

Osteopathic Medicine ("Lincoln") in Harrogate, Tennessee. (Complaint ("Compl."), ¶¶ 8, 9). As a student, she was enrolled in an insurance program that included long-term disability insurance for which Lincoln was the plan sponsor and Guardian the insurer and plan administrator. (Compl., ¶¶ 6, 8, 9 & Exhs. A, B).

In the spring of 2008, Ms. Schrom took a leave of absence for medical reasons and applied for disability benefits. (Compl., ¶ 9; Letter of Andrew Holly dated Dec. 2, 2011 ("Holly 12/2/11 Letter") at 2). Her claim was denied because she had not been a plan participant long enough to be covered for preexisting conditions (Holly 12/2/11 Letter at 2), and she was readmitted as a full-time student in the fall semester of 2008 (Compl., ¶ 9). During that semester, Ms. Schrom "experienced increasing musculoskeletal pain that began to effect her ability to walk, stand, and sit and, therefore, to attend medical school." (Compl., ¶ 9). In November, she stopped attending classes, and on November 25, 2008, the Assistant Dean of Students sent her a letter stating that, because of her absence for a period of two weeks, she was being withdrawn from Lincoln. (Letter of Jonathan Leo dated Nov. 25, 2008, attached as Exh. A to Declaration of Andrew Holly dated Dec. 2, 2011 ("Holly Decl."), attached to Holly 12/2/11 Letter, at GUAR 00194). On December 9, 2008, Ms. Schrom sent a letter to the Assistant Dean indicating that she was withdrawing from Lincoln due

to health issues. (Letter of Sarah E. Schrom dated Dec. 9, 2008, attached as Exh. 5 to Letter of Carla N. McKain dated Dec. 7, 2011 ("McKain 12/7/11 Letter")).

The plaintiff then submitted to Guardian a claim for long term disability benefits dated February 16, 2009. (Group Long Term Disability Claim, attached as Exh. B to Holly Decl.). In it, she stated that her disability consisted of spinal stenosis, spondylolisthesis, back pain, rheumatoid arthritis, and fibromyalgia; that she was first treated for her symptoms in 2004; and that she became unable to work at the end of October or beginning of November 2008. (Group Long Term Disability Claim, attached as Exh. B to Holly Decl.). By letter dated April 7, 2009, Guardian requested an "Attending Physician's Statement completed by the Physician that is certifying your disability from medical school" as well as "[m]edical records from your date disability began through [the] present." (Letter of Tracy Hillegass dated April 7, 2008, attached as Exh. A to Holly Decl., at GUAR 00372).

In response, Ms. Schrom submitted a form completed by Dr. Howard S. Dubin, an orthopedist, on May 15, 2009. (Attending Physician's Statement dated May 15, 2009 ("APS"), attached as Exh. C to Holly Decl., at GUAR 00362-00363). Dr. Dubin indicated that the plaintiff complained of neck and back pain and that he had

3

diagnosed her with spondylolisthesis. (APS). He had first evaluated her for this condition on December 8, 2008 and most recently on May 14, 2009. (APS). He concluded that Ms. Schrom was unable to do "any type of work that involves repetitive walking, bending, stooping, lifting, crawling, or standing for long period [sic] of time." (APS). Dr. Dubin also supplied a note indicating that he had treated the plaintiff on February 5, 2009 when she had been "thrown off a horse . . . reinjuring her back." (Treatment Note dated Feb. 5, 2009, attached as Exh. C to Holly Decl., at GUAR 00278). He placed he on "off work status" as of that date. (APS).

On June 3, 2009, Guardian sent Ms. Schrom a request for further information, including "[c]omplete medical records as well as all test results from your date disability began (11-13-08) through [the] present." (Letter of Dawn Brinker, attached as Exh. A to Holly Decl., at GUAR 00361). When Guardian did not receive additional records, it issued a decision denying Ms. Schrom's claim. In the denial letter, Guardian stated:

> We received your claim form advising us that your last day of medical school was November 13, 2008. On April 7, 2009 and June 3, 2009 we requested that you submit a fully completed Attending Physician's Statement from the physician that advised you to cease medical school due to your condition as of the last day of your attendance on November 13, 2008 in order to determine whether you meet the definition of "disability" under your plan. As of this date, we have not received the requested information.

4

(Denial Letter dated August 5, 2009, quoted in Letter of Carla N. McKain dated March 26, 2010 ("McKain 3/26/10 Letter"), attached as Exh. 6 to Letter of Carla N. McKain dated Nov. 23, 2011 ("McKain 11/23/11 Letter"), at 3).[1]

Ms. Schrom appealed this determination. (McKain 3/26/10 Letter). As part of the appeal, she submitted to Guardian additional medical records for the period January 2, 2008 through August 21, 2009. (McKain 3/26/10 Letter at 3). On April 16, 2010, Guardian again requested information showing that the plaintiff was "actively treating with a physician" prior to November 13, 2008, and it suspended consideration of her claim pending receipt of such information. (McKain 11/23/11 Letter at 4). On June 17, 2010, Ms. Schrom's attorney submitted additional medical records, and on September 1, 2010, Guardian denied her appeal. (McKain 11/23/11 Letter at 4).[2] Ms. Schrom then commenced this action.

Guardian contends that the plaintiff has failed to provide evidence that she was disabled prior to February 5, 2009, by which time she was no longer covered by the policy since she had been withdrawn from Lincoln in November 2008. (Holly 12/2/11 Letter at

---

[1] Neither party has submitted a copy of either the letter denying Ms. Schrom's claim or Guardian's determination on the appeal of that denial.

[2] Again, neither party has proffered copies of the April 16, 2010, June 17, 2010, or September 1, 2010 letters.

3). The plaintiff maintains that she has proffered ample evidence that she became disabled while still a student at Lincoln and is therefore eligible for benefits. (McKain 11/23/11 Letter at 2-4).

Ms. Schrom has now presented several discovery disputes for resolution. First, she contends that Guardian has refused to provide her with requested documents relating to Lincoln's insurance broker, Trinity Benefits Advisors ("Trinity"). She also maintains that Guardian produced documents in a jumble, without organizing them according to her requests or explaining how they were kept in the ordinary course of business. Finally, she seeks a protective order barring Guardian from taking her deposition. I will address each issue in turn and provide additional facts as appropriate.

Discussion

The scope of discovery in an ERISA case is informed by the standard for reviewing the denial of benefits. Accordingly, it is appropriate to begin by identifying the legal framework. In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court established four principles with respect to such claims: (1) in determining the appropriate standard of review, courts should be guided by principles of trust law; (2) under trust law principles, a denial of benefits should be reviewed de novo unless the plan provides to the contrary; (3) where the plan

6

provides the administrator or fiduciary with discretionary authority to determine eligibility for benefits, courts must apply a deferential standard of review; and (4) if a plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict is a factor to be weighed in determining whether there is an abuse of discretion. *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 110-11 (2008). Following *Firestone*, courts in the Second Circuit applied the *de novo* standard in circumstances where the administrator operated under a conflict of interest that affected the reasonableness of its decision. *McCauley v. First Unum Life Insurance Co.*, 551 F.3d 126, 130-31 (2d Cir. 2008).

In *Glenn*, the Supreme Court clarified two aspect of its ERISA jurisprudence. First, it held that a conflict exists when an entity is both the plan administrator and the insurer, not only when the administrator is also the employer. *Glenn*, 554 U.S. at 112-15. Second, the Court determined that when a plan gives discretion to the administrator, the existence of a conflict does not sanction application of a *de novo* standard of review; rather, courts must continue to utilize a deferential standard, but consider any conflict as one factor in determining whether the decision denying benefits was arbitrary and capricious. *Id.* at 115-18. After *Glenn*, the Second Circuit modified its ERISA

7

standards to conform to that decision. McCauley, 551 F.3d at 132-33; see VanWright v. First Unum Life Insurance Co., 740 F. Supp. 2d 397, 402 (S.D.N.Y. 2010).

Consistent with this deferential standard, "the presumption is that review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." Muller v. First Unum Life Insurance Co., 341 F.3d 119, 125 (2d Cir. 2003) (internal citation and quotation marks omitted); accord Cirincione v. Plumbers Local No. 200 Pension Fund, 404 Fed. Appx. 524, 526 (2d Cir. 2010); Daniel v. Unumprovident Corp., 261 Fed. Appx. 316, 318 (2d Cir. 2008); Wagner v. Metropolitan Life Insurance Co., No. 08 Civ. 11284, 2011 WL 2638143, at *10 (S.D.N.Y. Feb. 28, 2011); Baird v. Prudential Insurance Co., No. 09 Civ. 7898, 2010 WL 3743839, at *7 (S.D.N.Y. Sept. 24, 2010); VanWright, 740 F. Supp. 2d at 402. Accordingly, discovery is only permitted where it is reasonably likely that the requested information will satisfy the good cause requirement. See McDonnell v. First Unum Life Insurance Co., No. 10 Civ. 8140, 2011 WL 5301588, at *3 (S.D.N.Y. Nov. 3, 2011); Mergel v. Prudential Life Insurance Co., No. 09 Civ. 39, 2009 WL 2849084, at *2 (S.D.N.Y. Sept. 1, 2009); Kruk v. Metropolitan Life Insurance Co., No. 3:07-CV-1533, 2009 WL 1481543, at *3 (D. Conn. May 26, 2009). However, "'[t]he good cause standard required to obtain evidence

beyond the administrative record [at the discovery stage] is . . . less stringent than when requesting that the court . . . consider such evidence in its final determination.'" McDonnell, 2011 WL 5301588, at *3 (quoting Trussel v. Cigna Life Insurance Co., 552 F. Supp. 2d 387, 390-91 (S.D.N.Y. 2008); see also Burgio v. Prudential Life Insurance Co., 253 F.R.D. 219, 229-30 (S.D.N.Y. 2008).

The impact of Glenn on discovery in ERISA cases remains unclear. As one court has noted, "[w]hile some courts have found Glenn did not change the discovery rules surrounding ERISA benefit cases, other courts have reached the exact opposite conclusion." Winterbauer v. Life Insurance Co. of North America, No. 4:07 CV 1026, 2008 WL 4643942, at *5 (E.D. Mo. Oct. 20, 2008) (collecting cases). In my view, Glenn dictates more constrained discovery in one respect and somewhat more expansive discovery in another. Because it is now clear that a deferential standard of review applies when a plan accords the claims administrator discretion, even when the administrator is operating with a conflict, it will be more difficult in such cases to show good cause for discovery on the merits of the claim determination itself: "absent serious procedural deficiencies, discovery into the substantive merits of a claim remains off limits." Id.; see Myers v. Prudential Insurance Co., 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008). On the other hand, by identifying an administrator's conflict as one

9

factor to be weighed in evaluating whether a denial of benefits is arbitrary and capricious, <u>Glenn</u> invited discovery relating to any such conflict, since much of the relevant information would not have been part of the record.  "[T]he Court [in <u>Glenn</u>] made clear that not all conflicts are created equal.  Their significance in any given case depends upon all of the circumstances, including those suggesting a higher or lower likelihood that the conflict affected the decision." <u>Hogan-Cross v. Metropolitan Life Insurance Co.</u>, 568 F. Supp. 2d 410, 415 (S.D.N.Y. 2008).  With these principles in mind, I will turn to the parties' specific discovery disputes.

  A. <u>Insurer/Broker Documents</u>

  Ms. Schrom has moved to compel the production of documents concerning the relationship between Guardian and Trinity, the insurance broker.  (McKain 11/23/11 Letter at 13-15).  Because Guardian has already produced all communications between these entities relating to Ms. Schrom's claim (Letter of Andrew Holly dated Nov. 8, 2011, attached as Exh. F to Holly Decl., at 2), the only documents that remain in dispute are the contracts between Guardian and Trinity for Trinity's brokerage services.  (Holly 12/2/11 Letter at 4).

  Ms. Schrom's demand for documents relating to Trinity was triggered by an entry in Guardian's claim file memorializing a

communication between Dawn Brinker, who reviewed the claim on behalf of Guardian, and Sheila R. Brill, a broker at Trinity. Ms. Brinker wrote:

> [Ms. Brill] advised me this is a questionable claim, in that [Ms. Schrom] just "disappeared" -- just stopped showing up for school. Did not communicate anything to anyone until she filed claim. Advised [policyholder] will not be upset either way if claim is paid or denied, just want to be sure claim is legit prior to paying. Advised her I would send an additional letter today advising [Ms. Schrom] we still need APS from onset accompanied by all med recs from 11-08 to present. Advised APS alone will not be acceptable must also have med recs. Broker agreed [with] out handling.

(Managed Disability Claims Notes, attached as Exh. A to Holly Decl., at GUAR 00004). Guardian characterizes the reported conversation as a legitimate "part of Guardian's fact-finding process" (Holly 12/2/11 Letter at 5), and, indeed, it is susceptible to such an interpretation. On the other hand, it can also be read to reflect Trinity's substantive involvement in the claims decision process, since Trinity refers to Lincoln's position with respect to the merits of the claim.[3]

"The ultimate question in [ERISA] cases is whether the decision in question was arbitrary and capricious. In making that

---

[3] In this case, Trinity expressed Lincoln's position as neutral: it would not be "upset" whether the claim were approved or denied. The inference could be drawn, however, that the policy holder's position, as relayed by Trinity, is understood to have some relevance to the claims decision.

determination, the existence, nature, extent, and effect of any conflict of interest are relevant considerations." Hogan-Cross, 568 F. Supp. 2d at 415. The contractual relationship between Guardian and Trinity is surely relevant to such a conflict in this case where Guardian consulted with Trinity in connection with its claims decision. Accordingly, Ms. Schrom has established good cause for obtaining the requested information.

B. Deposition of the Plaintiff

Guardian seeks to depose Ms. Schrom in order to explore "apparent inconsistencies between Ms. Schrom's allegations of disability and her medical records." (Holly 12/2/11 Letter at 8). Guardian relies in part on representations made by Ms. Schrom in her application for social security benefits and notes that it did not have access to that application during the claim procedure. (Holly 12/2/11 Letter at 8). Guardian acknowledges that "this requested deposition would seek evidence outside the administrative record," but argues that "both the nature of Ms. Schrom's disability and her credibility are relevant topics for examination in this claim for benefits." (Holly 12/2/11 Letter at 8).

Ms. Schrom's claim hinges largely on the onset date and nature of her disability. Were she seeking to introduce evidence concerning her disability beyond that contained in the administrative record, there might well be good cause for taking

12

her deposition. If, for example, she were to proffer new expert evidence concerning the extent to which her conditions were presumptively disabling prior to the onset date identified by her treating physician, she would open the door to discovery. However, she has disavowed any such intention, stating that, except for information relating to any conflict under which Guardian was operating, she is relying on the administrative record.[4] (McKain 11/23/11 Letter at 4).

Under these circumstances, the mere desire to test the plaintiff's credibility is not enough to warrant taking her deposition. Although Guardian argues that it would be "absurd" to allow a claimant to make misrepresentations in a disability benefits application and then preclude the insurer from taking discovery (Holly 12/2/11 Letter at 8), the abuse of discretion standard generally limits review to the administrative record. Muller, 341 F.3d at 125; Wagner, 2011 WL 2638143, at *10. The only document outside the record that Guardian specifically identifies is Ms. Schrom's application for social security disability benefits

---

[4] To be sure, the plaintiff also argues that the Court should apply a de novo standard of review which, if appropriate, would warrant broader discovery. However, it is clear that even if Guardian's denial of her claim were affected by a conflict, the proper standard of review is still deferential and requires review based on the record that was before the administrator. See Glenn, 554 U.S. at 115-16; McCauley, 552 F.3d at 132-33.

13

(Holly 12/2/11 Letter at 8); but that application was filed well in advance of Guardian's final decision on Ms. Schrom's claim (Social Security and New York disability benefits applications, attached as Exh. E to Holly Decl.) and thus could have been available to the administrator had it been requested. Guardian cannot base its demand for discovery now on its failure to obtain information as part of its claim investigation process. See Muller, 341 F.3d at 125 (holding that where party had ample opportunity to develop record prior to claim determination, no basis for expanding record in district court); Dabush v. Guardian Life Insurance Co., No. 3:10cv67, 2011 WL 3563137, at *10 (D. Conn. Aug. 15, 2011) (same). Thus, good cause to take Ms. Schrom's deposition has not been shown, and her application for a protective order is granted.

    C. Organization of Documents

Finally, Ms. Schrom contends that when Guardian produced documents in response to her requests, it simply provided 382 pages in an undifferentiated mass. (McKain 11/23/11 Letter at 14). Rule 34(b)(2)(E)(i) of the Federal Rules of Civil Procedure provides that "a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Here, Guardian has provided declarations attesting that one of its employees sent the plaintiff's claim file to counsel in the order that it was kept in

14

the regular course of business and that counsel in turn numbered and produced the documents in the same order. (Declaration of Lynne Mack dated Dec. 2, 2011, attached to Holly 12/2/11 Letter, ¶ 3; Declaration of Kristin Wynne dated Dec. 2, 2011, attached to Holly 12/2/11 Letter, ¶ 2; Declaration of Shannon L. Bjorklund dated Dec. 2, 2011, attached to Holly 12/2/11 Letter, ¶¶ 2-4).

That is sufficient. Where massive numbers of documents are involved, it may be necessary for the producing party to provide a complete explanation of its information management structure if it wishes to produce those documents in the manner that they are ordinarily stored. See Pass & Seymour, Inc. v. Hubble Inc., 255 F.R.D. 331, 336 (N.D.N.Y. 2008) (more than 400,000 pages); CooperVision, Inc. v. Ciba Vision Corp., No. 06 Civ. 149, 2007 WL 2264848, at *4-5 (E.D. Tex. Aug. 6, 2007) (finding Rule 34 violated by "simply placing [32,000] documents in boxes and making them available" to opponent). However, where a more manageable universe of documents is at issue, they may be produced as they are kept in the regular course of business without imposing additional obligations on the producing party. See Rahman v. Smith & Wollensky Restaurant Group, Inc., No. 06 Civ. 6198, 2009 WL 773344, at *4 (S.D.N.Y. March 18, 2009). Any ambiguities can be addressed informally by counsel, and there is no indication that Ms. Schrom's attorney attempted to do so here and was rebuffed. Therefore,

15

Guardian need not reproduce its documents in a different form or correlate them to the plaintiff's discovery requests.

Conclusion

Consistent with the determinations above, Guardian shall produce the requested documents reflecting its contract with Trinity by January 15, 2012. Ms. Schrom's application for a protective order precluding her deposition is granted, but her request for Guardian to supply additional information about the manner in which it maintained the documents it already produced is denied. The pretrial order shall be submitted by February 15, 2012 unless any dispositive motion is filed by that date. If such a motion is filed, the pretrial order shall be due thirty days after the motion is decided.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 5, 2011

Copies mailed this date:

Carla N. McKain, Esq.
Coughlin & Gerhart, LLP
401 E. State Street, Suite 403
Ithaca, New York  14850

16

Jonathan R. Montcalm, Esq.
Dorsey & Whitney LLP
51 West 52nd Street
New York, New York  10019

Andrew J. Holly, Esq.
Dorsey & Whitney, LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402

George L. Mahoney, Esq.
Malapero & Prisco
295 Madison Avenue
New York, New York  10017