UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------
Sarah E. Schrom,

              Plaintiff,



11 Civ. 1680 (ALC) (JCF)

          - against -                 **Memorandum & Order**

**Guardian Life Insurance
Company of America**,

              Defendant.
----------------------------------

**ANDREW L. CARTER, JR., United States District Judge:**

    Having reviewed the record herein, including, without limitation, **(i)** Sarah E. Schrom's ("Plaintiff" or "Schrom") complaint, filed March 10, 2011, alleging, among other things, that Guardian Life Insurance Company of America ("Defendant" or "Guardian") unlawfully denied her claim for long-term disability benefits (under a Blanket Accident and Health Insurance Policy ("Policy" or "Plan")) in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"); **(ii)** Plaintiff's opposition to Defendant's motion for summary judgment, filed June 6, 2012 (Pl. Mem. of Law in Opp'n to Def's Mot. for Summ. J.) and Plaintiff's motion for summary judgment (Pl. Mem. in Supp. of Pl.'s Mot. for Summ. J., dated June 6, 2012); **(iii)** Defendant's reply, filed June 6, 2012 (Def. Reply Mem. of Law in Further Supp. of Defendant's Mot. for Summ. J.) and in Opposition (Def. Opp'n to Pl.'s Mot. for Summ. J., dated June 6, 2012); **(iv)** the administrative record of Plaintiff's claim; and (v) other applicable legal authorities, **the Court hereby grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment, as follows:**

1

## Factual Background

Plaintiff Schrom began attending Lincoln Memorial University – DeBusk College of Osteopathic Medicine ("Lincoln") in the fall of 2007. Plaintiff was an eligible participant under the long-term disability plan (the "Plan") that Lincoln sponsored. An insurance policy issued and underwritten by Defendant Guardian funded the plan.

The Plan names Guardian as the claims administrator, and gives it discretionary authority to review and decide claims for Plan benefits. The Plan states that "Guardian is the Claims Fiduciary with discretionary authority to determine eligibility for benefits and to construe the terms of this policy with respect to claims." (Plan p. 24.)

This Plan provides that participants are eligible for benefits if they become "totally disabled while insured under this policy . . . [and submit] acceptable written proof of" the disability. (Plan p. 17 (Exhibit A to the Declaration of Lynne Mack).)

The Plan defines "disability" in two separate ways. For the first 24 months of payments, the participant is "completely unable to attend [Lincoln] or a similar institution on a regular basis and maintain his or her status as a student in good standing." (Plan p. 22.)

Following the initial 24-month period, the participant only remains disabled if he or she is both unable to attend Lincoln and he or she is "completely unable to perform on a full-time basis the major duties of any occupation or employment for which he or she is, or could become, qualified by education, training or experience." (Plan p. 22.)

The Plan requires that in order to receive benefits, the participant must become disabled "while the student is insured by this policy." It further confirms that a student "will not be

2

considered disabled under this policy if he or she is not under the regular care and treatment of a doctor." (Plan p. 22.) Similarly, the Plan states that "coverage under this policy ends on the date [an individual's] active full-time enrollment [with Lincoln] ends for any reason . . . [s]uch reasons include disability, death and leave of absence." (Plan p. 13.)

Prior to attending medical school in 2007 and 2008, Plaintiff had experienced intermittent back pain from the age of approximately 15 years old. (Schrom Declaration ¶ 19.) Schrom frequently reported to doctors that her back condition arose around the time she was 13 to 15 years old. Prior to attending Lincoln, she also admitted to having intermittent health issues related to neck pain, fatigue, arthritis, and burning and numbness in her extremities. (Schrom Declaration ¶ 5.)

Only a few months after she first began attending Lincoln in the fall of 2007, Schrom took a leave of absence from the University and sought disability benefits for an alleged back injury. On July 7, 2008, Guardian denied her first claim because the alleged disability was caused by a pre-existing condition and Schrom had not yet satisfied the one-year pre-existing condition waiting period. Guardian's internal notes state Plaintiff was disabled as of October 15, 2007 but for the pre-existing condition. (Guar 1, 2.)

Plaintiff admits that by March 2008, she had arranged to return to the University for the fall 2008 semester. Schrom returned to full-time status at Lincoln in the fall of 2008. Plaintiff missed classes in November 2008. She did not inform Lincoln's administration of her absences. Dr. Jonathan Leo, Lincoln's Associate Dean of Students, repeatedly tried to contact Schrom in November to check her welfare and ask for an explanation for her absences, but the emails went unanswered.

In mid-to-late November, Lincoln sent two University staff members to Schrom's residence to check on her. Plaintiff states that they asked what her plans were for school, and she replied she was having health issues and did not know what her plans were at that time. Lincoln's records reflect that Schrom reported that she had missed classes because her kids were sick and she was not feeling well. (Guar 0011.)

Subsequently, Dr. Leo sent a letter dated November 25 to Schrom stating: "Per your conversation with Admissions Staff on Friday and because of your absence from medical school for the past two weeks we are withdrawing you from Lincoln Memorial University-DeBusk College of Medicine." (Guar 00194.)

On December 9, Schrom sent a letter to Dr. Leo withdrawing herself from Lincoln as required by the University's policies. (Schrom Declaration ¶ 30.) Lincoln employee Amy Arnold sent another letter dated December 11, 2008 advising Schrom that her withdrawal date was November 25, 2008. (Guar 00202-03.)

In early January 2009, several weeks after Schrom withdrew from Lincoln, she fell from a horse while horseback riding. (Guar 0079, 0278, 0369.) She fell off onto her right side, hit the right side of her head, and broke a rib on her right side. (Schrom Decl. ¶ 78.) Plaintiff admits that horseback riding when she was much younger was one source of her back problems. (Schrom Decl. ¶ 21.) On February 5, 2009, Schrom went to a physician, Dr. Dubin, for her back injury. His record reported that "she got thrown off a horse and reinjuring [sic] her back." (Schrom Decl. ¶ 34.)

*Plaintiff's Disability Claim*

4

On February 19, 2009, over three months after she stopped attending classes and approximately one month after she was injured in a horseback riding incident, Schrom filled out her application for disability benefits under the Plan. Amy Arnold dated the employer section of the application February 19, 2009. Schrom alleged that the date she became "unable to work due to illness or injury" was at the "end of October/beginning of November" of 2008. (Schrom Decl. ¶ 21.)

*Defendant's Review of Plaintiff's Claim*

Claims for benefits are reviewed by the Long Term Disability Claims department, which is walled off from the departments handling company finances, sales and contract negotiations with policyholders. (Declaration of Dawn Brinker ¶¶ 5, 6.) The benefit analysts who decide claims for benefits do not receive any professional or reputational benefit from denying a claim, and their compensation is not tied to the financial status of Guardian, policyholders or insurance brokers. Rather, their performance reviews depend on their timeliness, documentation, and ability to understand and follow the Department of Labor and administrative requirements. (Brinker Decl. ¶¶ 2-4.)

Pursuant to its responsibilities as claims administrator, Guardian reviewed and investigated Schrom's claim for disability plan benefits. By letter dated June 3, 2009, Guardian requested that Schrom submit an Attending Physician's Statement (an "APS") and medical records certifying her alleged disability date of October/November 2008. Guardian repeatedly contacted Plaintiff to invite her to submit records that would support her claim for benefits. (Guar 0361-62, 372-74.) Schrom produced an APS signed by Dr. Dubin, the physician who treated her for her alleged back injury. This APS indicated that Schrom was disabled and unable

5

to work on February 5, 2009, nearly three months after she last attended classes at Lincoln. (Guar 0362-63.) She was not released to return to work and the anticipated release date was "never." The APS also stated "feel patient will not be able to do any type of work that involves repetitive walking, bending, stooping, lifting, crawling or standing for long period of time." Plaintiff admits that this was the only APS that she submitted in connection with her 2009 claim for benefits.

Guardian found that "[t]he only relevant records were post-withdrawal reports from Dr. Dubin, who certified that she was first disabled in February 2009." Def. Opp'n to Pl.'s Mot. for Summ. J. at 12. In contrast, Guardian considered that Schrom's doctor's notes from August through early October 2008 noted that her "[l]ow back is quite a bit improved."

Schrom did not submit any records of medical treatment between records dated October 21, 2008 and December 8, 2008. Dr. Thompson, an osteopath, reported on October 21, 2008, that chief complaint is "omt" [osteopathic manipulative therapy] and stated "[Patient] feels energy not returning, especially under stress of med school" and "rest is helpful for pain, but long stud[y]ing can flare back." The treatments for these conditions were stretch and walk [every day], "OMT [osteopathic manipulative therapy] to affected and aforementioned areas utilizing indirect technique" and "FU prn for OMT" are recommended on August 19, September 12, September 18, September 23 (OMT only), and October 21, 2008.

Dr. Dubin's notes from December 8, 2008 indicated that Schrom has a back condition. Schrom reported that she "was attending school at [Lincoln] but because of continued medical problems could not continue beyond this year." (GUAR 0272.) Dr. Dubin did not identify any

functional limitations. He stated: "Medical school does entail a lot of walking, stooping, and standing for long periods of time, which will aggravate her back condition."

On December 8, 2008, Dr. Dubin took x-rays and diagnosed grade II spondylolisthesis with a pars defect at L5-S1. The x-rays also showed "obliteration of the disc space which according to the x-ray tech is not positional." Dr. Dubin also ordered an MRI for further evaluation. (Schrom Decl. ¶ 27.) The December 8, 2008 record also states "[p]ositive straight leg raising test on the left, negative on the right. EHL's [Extensor hallucis longus] markedly weak on the left compared to the right. . . . Numbness in both extremities where noted, down both legs into her feet below the knee only." Dr. Dubin placed Schrom "off-work" in February 2009, not before. (Guar 0362-63, 0368-69.)

In January 2009, Dr. Misischia, a rheumatologist, noted that Schrom had been "lost to follow up" since fall 2008, at which time a blood test "revealed a negative rheumatoid factor." Dr. Misischia did "not see any evidence of active synovitis," which was surprising because Schrom had "been off the medication for several weeks."

*Defendant Denies Plaintiff's Disability Claim*

On August 5, 2009, Defendant denied Plaintiff's claim for disability benefits by letter. (Guar 0356-58.) In the letter, Defendant outlined the basis on which it determined Plaintiff's claim. *Id.* The letter summarized Defendant's analysis of Plaintiff's claim. *Id.* The letter specifically stated that Guardian had twice requested an APS that would show a disability going back to her last day of school (November 13, 2008), but did not receive one. Guardian was therefore "unable to approve [Schrom's] claim." *Id.* at 0356. The letter also explained Schrom

had a right to appeal, and stated that "information necessary to review [her] claim" includes an "Attending Physician's Statement of Disability certifying [her] disability from [her] date last worked" and "[m]edical records and diagnostic test results from all treating physicians in support of [Plaintiff's] disability. . . . We regret that our decision could not have been more favorable to you; however, we must abide by the terms of the policy." *Id.* at 0358.

*Plaintiff's Appeal*

On March 25, 2010, Plaintiff filed an appeal of Guardian's denial of benefits ("Appeal Letter"). Appeals from denials of benefits are reviewed by the Risk Management Services Group, which is walled off from the departments handling company finances, sales, and contract negotiations with policyholders. It is also separated from the department that made the initial claims determination. (Declaration of Lynne Mack ¶¶ 5-7.) Like the benefits analysts who review claims, the Adjudication and Procedure Specialists who review appeals do not receive any professional or reputational benefit from denying a claim, and their compensation is not tied to the financial status of Guardian, policyholders, or insurance brokers. The performance reviews of the Specialists depend on whether they understand and apply the relevant Plan language and federal law, and whether they remain objective by limiting their communications with the Benefit Analyst who decided the claim. (Mack Decl. ¶¶ 2-4.)

In the Appeal Letter, Schrom argued that she did not withdraw from Lincoln until December 9, 2008. However, Schrom acknowledged that the only APS she submitted stated that her date of disability was February 5, 2009. (Guar 0206, 210-11.) To follow up on Schrom's claim that she actually left school on or about December 9, 2008, Guardian contacted Lincoln to request more information about Schrom's withdrawal date. Lincoln initially submitted a form to

8

Guardian noting that Schrom's "[d]ate last worked" was November 13, 2008, and the "[d]ate employment [was] terminated" was November 25, 2008. (Guar 0377.) Lincoln employee Amy Arnold confirmed that Schrom was withdrawn as of November 25, 2008, and forwarded Lincoln's documentation to that effect. (Guar 0010-12.)

After receiving this information, Guardian contacted Lincoln again to determine whether Schrom's December 9, 2008 letter attempting to withdraw had any effect on Lincoln's determination of the withdrawal date. Guardian spoke to Dr. Jonathan Leo, Associate Dean of Students, who had approved the withdrawal date of November 25. Dr. Leo said that Schrom was withdrawn on November 25 due to her unexplained absence and after the admissions office told him that Schrom called to say she would not be back. Dr. Leo forwarded to Guardian a copy of his November 25 letter notifying Schrom of her administrative withdrawal as of that date. (Guar 0012-13.) During the course of these communications, Defendant argues that Lincoln never attempted to influence Guardian's handling or resolution of the claim. (Mack Decl. ¶ 9.)

During the appeal, Guardian again contacted Schrom to request medical documentation supporting her claim that she was disabled in November 2008. Guardian contacted Doctors Misischia (rheumatologist), Namey (rheumatologist), and Trudell (neurologist) on Schrom's behalf to obtain records. While Guardian received additional information from these providers, none of the reports placed Schrom in an off-work status prior to February 2009. (Guar 0114-15.) Plaintiff admitted that only the APS dated May 14, 2009 gave February 5, 2009 as a date for "off-work" status. Plaintiff argues that Dr. Namey provided an APS a year earlier, on February 21, 2008, that said Plaintiff had not been released to return to work with an anticipated release date of August 1, 2008.

9

On July 23, 2010, Guardian submitted Schrom's records to one of its medical specialists for review to determine whether "the medical [evidence] support[ed] functional limitations that prevented [Plaintiff] from attending classes on a regular basis and maintaining her status as a student in good standing as of 11/13/08." (GUAR 16.) The review was by Dawn L. Hughes ("Hughes"), a certified case manager with a master of science in nursing. (GUAR 389-390.)

On July 30, 2010, Guardian informed Plaintiff's counsel that the review process was "continuing," that it did not yet have information that Plaintiff was put on "off school" status by a physician on or around November 13, 2008, and that it was awaiting further medical records. (GUAR 141.) The letter further states: "Dr. Thompson last saw Ms. Schrom on October 21, 2008 and his office note does not indicate that she was unable to attend medical school due to her condition. Ms. Schrom first treated with Dr. Dubin on December 8, 2008, however, according to the information received from Dr. Dubin, he did not place her on an 'off school' status until February 5, 2009." (GUAR 0141.)

On July 30, 2010, Hughes ordered surveillance on Plaintiff with the Special Investigations Unit ("SIU"), attached internet searches of Plaintiff's name, and wrote that Plaintiff was "throwing hay bales" in June 2008 and "was thrown from a horse" in February 2009. Defendant conducted three days of surveillance of Plaintiff's activities on August 28, 29, and 30, 2010. The summary and detailed surveillance reports stated there was no activity by Plaintiff over the three days and Plaintiff did not sell horses, provide riding lessons, or participate in horse-related events.

The medical specialist reviewed the file and determined that, while there was evidence of a medical condition, it was "not clear if this condition rises to the level of disability as there is

also documentation that claimant is baling hay and horse back riding." Hughes also corresponded with her doctors, asking for additional medical records. The appeals specialist promptly contacted Schrom's attorney to request more information regarding the claim.

Hughes reviewed all of the medical records later received and eventually determined that, although there was documentation of various medical conditions, Schrom "was not placed off work/off school due to these conditions on or around 11/13/08." Further, the medical documentation "does not provide the functional limitations and/or restrictions to support the claimant's inability to attend class on or around 11/13/08."

On September 1, 2010, Guardian finally denied Schrom's appeal by letter, explaining that "the medical documentation does not support a condition severe enough to render Schrom 'disabled' on or around November 14, 2008 when she ceased attending classes at the University. (Guar 0036.) Guardian noted that no physician had placed Schrom in an off-work status at or around the time she stopped attending classes or withdrew from Lincoln.

Guardian addressed Schrom's allegation that she withdrew from Lincoln on December 9, noting the "[e]ven if we conclude that this argument is correct, coverage was no longer in force on February 5, 2009, the date Dr. Dubin states he placed Schrom on an 'off work status.'" (Guar 0040.)

The issue before the Court is whether Plaintiff was entitled to disability benefits under the Policy's terms. Plaintiff and Defendant both moved for summary judgment with respect to all claims.

## Summary Judgment Standard

Summary judgment is appropriate where the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008). The burden rests upon the moving party to show that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" only where it will affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For there to be a "genuine" issue about the fact, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, the Court is required to resolve all ambiguities and draw all inferences in favor of the non-moving party. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Where there is no evidence in the record "from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is appropriate. *Catlin v. Sobol*, 93 F.3d 1112, 1116 (2d Cir. 1996).

### I. Standard of Review Under ERISA

In an ERISA Action, an administrator's decision to deny benefits is generally reviewed *de novo*. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009). However, when a "written plan document confers upon a plan administrator the discretionary authority to determine eligibility ... [a Court] will not disturb the administrator's ultimate conclusion unless it is arbitrary or capricious." *Id.* (internal quotation marks omitted) (citations omitted). Under the deferential standard, courts may only consider the evidence that the fiduciaries considered

themselves, and are limited to the administrative record. *Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir. 1995). This is consistent with the fact that nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, and also consistent with the ERISA goal of prompt resolution of claims by the fiduciary. *Id.*

Because district courts are required to limit their review to the administrative record, it follows that, if upon review a district court concludes that the plan trustees' decision was arbitrary and capricious, it must remand to the trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a "useless formality." *Miller,* 72 F.3d at 1071.

The Plan, acting through the Plan Administrator, delegates to Guardian discretionary authority to make benefit determinations. Plaintiff agrees that the Plan invested Guardian with discretion. (Pl. Mem. of Law in Opp'n to Def's Mot. for Summ. J at 15.); *see Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948 (1989). This clear grant of discretion in the policy is sufficient to trigger review under the arbitrary and capricious standard. "A court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Celardo v. GNY Auto. Dealers Health & Welfare Trust,* 318 F.3d 142, 146 (2d Cir. 2003); *Krauss v. Oxford Health Plans, Inc.,* 517 F.3d 614, 623 (2d Cir. 2008). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator] ... and requires more than a scintilla but less than a preponderance." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund,* 609 F.3d 133, 141 (2d Cir. 2010); *Miller,* 72 F.3d at 1072. The

Court reviewing plan administrators' benefit denials for arbitrariness and capriciousness is "not free to substitute [its] own judgment for that of the [administrator] as if we were considering the issue ... anew." *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995); see also *Mohamed v. Sanofi–Aventis Pharm.,* No. 06–cv–1504 (BSJ), 2009 WL 4975260, at *9 (S.D.N.Y. Dec. 22, 2009) (citation omitted) ; *Zuckerbrod v. Phoenix Mut. Life Ins. Co.,* 78 F.3d 46, 49 (2d Cir. 1996) ("A district court may not upset a reasonable interpretation by the administrator") (citation omitted). However, a court must consider "whether the decision was based on a consideration of the relevant factors." *Miller,* 72 F.3d at 1072 (internal quotations omitted). In determining whether relevant factors were considered and substantial evidence relied upon in an ERISA eligibility determination, courts are limited to the reasons given "at the time of denial." *Strope v. UNUM Provident Corp.,* No. 06 Civ. 628C, 2010 WL 1257919, at *4 (W.D.N.Y. March 25, 2010).

Plaintiff contends that Defendant inappropriately rely on the date Plaintiff ceased attending class and surveillance while not giving adequate weight to Plaintiff's diagnoses of grade II spondylolisthesis with a pars defect at L5-S1, obliteration of the disc space, problems with her left leg, numbness in both extremities, and a bilateral intervertebral foraminal stenosis. Plaintiff argues that Defendant's "elective emphasis or reliance on parts of the claim file that support its view – while ignoring other evidence that does not – indicates that the administrator was affected by its conflict of interest." (Pl. Mem. in Supp. of Pl.'s Mot. for Summ. J. at 19 citing *Durakovic v. Building Service 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010).)

Plaintiff also argues that Guardian engaged in procedural irregularities suggestive of a conflict of interest when Guardian delayed in issuing a timely benefit determination. Plaintiff

contends that under 29 C.F.R. § 2560.503–1(f)(3), Defendant was required to determine her claim 45 days after it was fully submitted. Thus, Plaintiff argues that Defendant's adverse benefit determination "bespeaks of . . . conflict of interest." (Pl. Mem. in Supp. of Pl.'s Mot. for Summ. J. at 17.) The parties dispute whether Guardian was entitled to extensions of time to determine Schrom's claim. This dispute is rendered immaterial because this is not *de novo* review. Moreover, New York federal courts have held that a delay given to allow the claimant more time to submit supporting documentation, as Guardian did here, "is not the type of procedural irregularity found by courts to weigh in favor of finding an abuse of discretion." *Daniel v. Unum Provident Corp.*, 2010 WL 8292157 *1, *16 (E.D.N.Y. Oct. 27, 2010); *see also Duncan v. Cigna Life ins. Co. of N.Y.*, 2011 WL 6960621 *1, *5 (E.D.N.Y. Dec. 30, 2011) (holding that alleged delay of 53 days did not alter the standard of review). The Second Circuit Court of Appeals has explicitly held that a claimant has not exhausted her administrative remedies by operation of law where she waits for and receives a decision, and then administratively appeals that decision instead of going directly to court when the administrator fails to offer a timely initial determination. *Demirovic v. Building Service 32 B–J Pension Fund*, 467 F.3d 208, 212 (2d Cir. 2006). The administrator's "eventual decision constitutes a final decision and exercise of the [administrator's] discretion," which must be reviewed under the arbitrary and capricious standard. *Id.*

## II. Substantial Evidence Supported Defendant's Determination

Plaintiff argues that Defendant's denial of benefits was arbitrary and capricious because she and her doctor should have been contacted directly to resolve Guardian's questions about her condition and eligibility. Guardian's medical reviewers "did not examine or interview plaintiff."

(Pl. Mem., at 3, 24.) But, this is not dispositive. "[I]t is well settled that, in denying a claim for benefits under ERISA, the plan administrator may rely on the opinion of independent medical reviewers who have not conducted an examination of the applicant, even where the reviewer's opinion conflicts with that of the treating physicians." *Zoller v. INA Life Ins. Co. of New York,* No. 06–cv–112 (RJS), 2008 WL 3927462, at *13 (S.D.N.Y. Aug. 25, 2008). In an ERISA disability benefits case, the Supreme Court has held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord.* 538 U.S. 822, 834, 123 S.Ct. 1965, 1972 (2003).

Here, Schrom claims that she is still disabled and seeks disability benefits through today. In addition to the evidence already described, Guardian found that her documented activities based upon medical records generated after Guardian's claim was decided (and thus outside of the administrative record) are inconsistent with her claims of disability. For example, in September 2010, Schrom's doctor noted that she "cut back on some of the most heavy physical tasks such as tossing bales of hay." Guardian found that Schrom's posts on publicly-available Facebook pages suggest that she attends baseball games, contrary to her claims that she cannot perform sedentary work and has trouble walking, standing, sitting, and doing tasks that involve fine motor skills. (Bjorklund Decl. Exh. 2.) Schrom admitted that she offered to drive to a friend's house to give a horse a veterinary shots and that she is able to use a computer.

Guardian also cites her treating physicians' reports, both before and after Plaintiff's denial, as evidence that Plaintiff is not disabled. Dr. Shapiro, a rheumatologist, noted in

September 2010 that "nothing suggest[s] active rheumatoid disease" and in February 2011 wrote "I could never convince myself that there was sufficient evidence for this diagnosis [of rheumatoid arthritis]." (Scrom 0377, 0381-82.) Dr. Mischichia's notes in 2008, which are part of the administrative record, indicate that Schrom "want[ed] to get pregnant, possibly in the near future." (GUAR 0076.) Plaintiff did become pregnant. In February 2011, Schrom told Dr. Shapiro that "[s]he found her joint pain did subside through her pregnancy and she stopped Enbrel in the third trimester and has not reinitiated it yet. She also noted that long troublesome back pain resolved late in pregnancy. She has however continued to experience 'burning' at the lower legs and 'spasms' at the right lower leg and foot." (Schrom 377.) Schrom's doctor reported that Schrom "is still thinking of pursuing some sort of medical career, such as a nurse practitioner," but that Schrom was presently staying at home with her four (now five) children. (Schrom 0381.)

*Full and Fair Review Under ERISA*

Plaintiff argues that Guardian did not follow its own best practices and procedures or ERISA. Plaintiff argues that her complaint of chronic neck and back pain was a "complex claim" that should have been elevated to risk management for determination. Plaintiff argues that Guardian's focus on whether Plaintiff saw a doctor on or around the alleged date she stopped attending classes directly contradicts the training manual's description of how to interpret the "onset" date of disability and the last day worked. Plaintiff argues that Guardian drafted the Policy with a specific exception to instances when it will not pay benefits: when loss of status as a regular full-time student is due to disability. (Complaint Ex. A., p. 21; Guar 327, 516.) She argues that under the Policy and Guardian's internal procedure and training manuals, proof was

17

not required that she was unable to attend school on November 13, 2008. Plaintiff concedes to missing classes, but asserts that the University and Guardian did not document absences.

"The fiduciary's failure to provide a full and fair review can constitute a decision that was arbitrary and capricious. *Anderson v. Sotheby's Inc.,* 04 Civ. 8180, 2006 WL 1722576, at *18 (S.D.N.Y. June 22, 2006). The purpose of [the full and fair review] requirement is to prepare adequately for further administrative review or an appeal to the federal courts." *Juliano v. The Health Maint. Org. of New Jersey, Inc.,* 221 F.3d 279, 287 (2d Cir. 2000) (quotations and citation omitted). At its core, the full and fair review requirement "includes knowing what evidence the decisionmaker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence by both parties before reaching and rendering his decision." *Sotheby's Inc.,* 2006 WL 1722576, at *18.

Finally, Plaintiff claims that because Guardian is a conflicted administrator with the dual role of both evaluating and paying benefits claims, it should be afforded as little deference as possible under *Metropolitan Life Ins. v. Glenn,* 554 U.S. 105 (2008). However, "the deference to be given to the administrator doesn't change unless the plaintiff shows that the administrator was, in fact, influenced by the conflict of interest." *Hobson,* 574 F.3d at 83. (internal quotation marks and citation omitted). A conflict of interest is given greater weight when a company has "a history of biased claims administration." *Metropolitan Life Ins. v. Glenn,* 554 U.S. at 117. A conflict of interest is weighted "perhaps to the vanishing point," when the administrator has implemented procedures to reduce the risk of error, such as "walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.* As substantial

18

evidence supported Defendant's decision, there is no indication that conflict of interest in fact influenced Defendant. As the Supreme Court has stated, "conflicts are but one factor among many that a reviewing judge must take into account" and "will act as a tiebreaker when the other factors are closely balanced." *Glenn*, 554 U.S., at 117, 128 S.Ct. at 2351. Assuming *arguendo* there were an actual conflict, this is not a case in which the factors are so closely balanced that a tiebreaker is required. *See Hobson*, 574 F.3d at 83.

Even if the standard of review is modified by a conflict of interest, Guardian's determination that Schrom was not disabled in November or December 2008 was reasonable and must be affirmed. Plaintiff relies on critical facts that are outside of the evidence contained in the administrative record, which cannot be considered on this motion for summary judgment. No physician ever provided any certification that Plaintiff was actually disabled in November or December 2008 when she left Lincoln. Guardian requested and gave Plaintiff the opportunity to submit retroactive certification during the appeal process. Because no physician was willing to certify that Plaintiff was disabled prior to February 2009, Guardian's conclusion that she was not disabled when she left Lincoln was within the proper exercise of their discretion.

Plaintiff also asserts that Defendant's determination fails to account for the fact that the Social Security Administration ("SSA"), on appeal, approved Plaintiff's claim for LTD benefits. (Schrom Declaration ¶ 43; Schrom 387.) The SSA found Plaintiff to be disabled under its rules as of December 9, 2008. Even though the SSA finding is inconsistent with Guardian's determination, Guardian would not be "required to accord special deference to the determination of the Social Security Administration." *Durakovic*, 609 F.3d at 141 (citing *Paese v. Hartford Life*

*and Accident Ins. Co.,* 449 F.3d 435, 442–43 (2d Cir. 2006). Defendant came to a sound conclusion that Plaintiff was not disabled under the Plan.

### III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [# 29] is GRANTED and Plaintiff's motion for summary judgment [# 35] is DENIED. The Clerk of the Court is respectfully requested to enter judgment in favor of the Defendant. The Clerk is further requested to close this case.

SO ORDERED.

Dated: New York, New York

March 19, 2013

_____
Andrew L. Carter, Jr.
United States District Judge